Curia per
Huger, J.
(sitting for Johnson, J. who was sick.) Had this question never been made .before, I should feel mucli. difficulty in forming and should hesitate long before I expressed any opinion on thé subject. The power of taking private property tor public uses, without- making compensation, is so much at .variance with the established principles of this Court, that nothing but the most urgent necessity,' .or universal acquiescence could have reconciled nie to its existence! Had this power been seldom or never used, I should have anticipated from its exercise the greatest evils, but éxperience is a soother of apprehensions. Ever since the existence of our government — of all governments, this power has been in constant use; and perhaps we have experienced as few. evils from-the' exercise -of. it, as from any other in the whole catalogue o.f sovereign attributes. This, like every other power, will be occasionally abused; and the only remedy fór this, and many other evils, is to be found in the good sense and virtue of the people. It would be enough, in any other country than our own, to rest its legitimacy upon its antiquity, but here we have imbibed too much of the metaphysics of the revolution, to be satisfied with any thing, because it has been. ■ We must know why it should be.
It is true that the elementary articles, as well as the people, in the Constitution of the h nited States, have said that private property ought not to be taken. for public. purposes unless compensation be made; and so say we all, and. so have said the legislature on many occasions, and I have no doubt will so act whenever a proper occasion is presented. But this is not a-limitation of the pow *543 er — it is only the moral obligation by which the legislature is bound, to use this power discreetly and justly. But this obligation is imperfect, and cannot be enforced by this or any other Court. If the words in the Constitutions of the United States and Massachusetts, are tobe taken as a limitation of the power, and not a recognition of the moral obligations not to abusé it, it is very clear they cannot be construed into a grant of the power, but a limitation upon a power already possessed. The words are — “nor shall private property be taken for public use, without just compensation.” In' no part of the Constitution is this power expressly given. This, then, is a limitation on an implied existing power.
In most of the State Constitutions this power is recognized, and in many limited, as in that of New Hampshire. “But no part of a man’s property shall be taken from him, or applied to public uses, without his own consent, or that q£ the representative body of the people.” There are no words in our Constitution limiting or granting this power. Does it not therefore exist ? From the continued use of the power — from the constitutional construction of the Constitution of the United States — from the almost universal recognition ofit, by all the States, as well as from the necessity of such a power, I must conclude that it exists in our legislature also. '
But it is contended that this powér is not only not given in the Constitution,- but is expressly negatived in the 2nd Section of the 9th Article — “ No freeman shall be deprived of his life, liberty, or property, but by the judgment of his Peers or by the law of the land.” An act of the legislature of yesterday, it is said, is not a “ law of the land,” within the meaning of this clause. What is meant in.the Constitution by “ law of the land,” has never been well explained. Learned commentators and learned Judges, have differed in their *544 definitions of this term. I shall not attempt to .recount them: it is enough to decide in this case, that the act in question is the law of the land, as much so, as a militia act, or road act, or any other act, which the legislature of the country has always been in the habit of passing.Acts like the one in question have been passed, not only ever since the adoption of the Constitution j but ever since the first establishment' of provincial legislatures in this country, and indeed by the parliament of Great Britain, as far back as the memory of man reaches. What has been so long existing is under any of the definitions a law of the land. The legislature then was authorized by the law of the land, to pass this act, and consequently the relators have not been deprived of their property, without the law of the land. The motion is refused..'